IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

COMDY VANG,

    Petitioner,                          No. CIV S-09-0704 FCD GGH P

    vs.

JAMES WALKER,

    Respondent.                         <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a sentence of life without parole plus 25 years to life, imposed by the San Joaquin County Superior Court on November 13, 2006 pursuant to petitioner's September 27, 2006 conviction for first-degree murder with a drive-by shooting special circumstance, attempted murder, and several firearm allegations. (Cal. Penal Code §§ 187, 190.2 (a)(21), 664/187, 245(a)(2), 190(d), 12022 (a)(1), 12022.5 (a), 12022.53 (b)-(d).) Petitioner seeks relief on the grounds that: (1) the trial court's imposition of a firearm enhancement pursuant to P.C. § 12022.53 (d) violates state law, federal due process and double jeopardy because it arises from the same act as the drive-by shooting special circumstance (P.C. § 190.2 (a)(21)); and (2) the trial court's imposition of the drive-by shooting special circumstance violates the Eighth Amendment because it requires the same elements of proof as the drive-by

1

theory of murder. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus be denied.

## PROCEDURAL BACKGROUND

Petitioner timely appealed his convictions to the California Court of Appeal, Third Appellate District. The appellate court affirmed his convictions in a reasoned opinion on January 24, 2008. Petitioner then sought review of his convictions in the California Supreme Court. That petition was denied without comment on April 9, 2009. Petitioner filed this federal petition for writ of habeas corpus on March 10, 2009.[1] Respondent filed an answer on June 23, 2009. Petitioner filed his traverse on August 20, 2009.

Respondent concedes that petitioner's claims are exhausted. (Answer at 1.)

## FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> On April 2, 2005, defendant fired a gun from a car driven by former codefendant Nou Her, into a car driven by Herseng Vang, killing Vang. Nou Her and Tueka Moua, who was in the back of Her's car at that time, identified defendant as the shooter.
>
> The knowledge of the participants and the details of events were the subject of differing accounts, but viewing the evidence in the light favorable to the verdict (People v. Barnes (1986) 42 Cal.3d 284, 303-304), a rational jury could piece together the following explanation for the shooting.
>
> Tueka Moua and a group of relatives were at Taft Park, playing basketball, when several cars pulled up and a number of men got out with tire jacks or similar weapons and began chasing people.

---

[1] The "mailbox rule" applies to applications to both the California and federal courts for purposes of calculating tolling of the statute of limitations under AEDPA. Dils v. Small, 260 F.3d 984, 986 (9th Cir. 2001); Anthony v. Cambra, 236 F.3d 568, 574-75 (9th Cir. 2000), cert. denied, 533 U.S. 941, 121 S.Ct. 2576 (2001). Since the instant petition is dated March 10, 2009, the court uses that date as the filing date, rather than the date the petition was actually filed by the Clerk of Court.

> The attackers bashed in some car windows and stole stereo equipment. Tueka Moua fled and went to a cousin's house, where he roused his uncle, Nou Her, and explained what had happened. Nou Her, defendant and Tueka Moua drove to Taft Park but found nobody, so they drove to Van Buskirk Park, where Tueka spotted some of the attackers. When the attackers left by car, the trio followed in their car. Nou Her bumped his car into one of the attacker's cars and then pulled alongside it, whereupon defendant began shooting into the car, ultimately killing Herseng Vang.
>
> The jury deadlocked as to former codefendant Nou and he is not party to this appeal. The jury convicted defendant as indicated above.

(Lod. Doc. 3 at 2.)

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. <u>Woodford v. Viscotti</u>, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United

1  States Supreme Court.  Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).
2  Thus, extrapolations of settled law to unique situations will not qualify as clearly established.
3  See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not
4  permitting state sponsored practices to inject bias into a criminal proceeding by compelling a
5  defendant to wear prison clothing or by unnecessary showing of uniformed guards does not
6  qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

   The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

   The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.

5

Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claims

    A. Firearm Enhancement

Petitioner claims that the trial court improperly added a 25-year firearm enhancement, consecutive to his sentence of life without parole, based on the same act as the drive-by shooting special circumstance. Petitioner argues that the firearm enhancement statute itself provides that the enhancement does not apply "if another provision prescribes a greater penalty or longer prison term for the same conduct." (Petition (hereinafter Ptn.) at 18[2], citing P.C. § 12022.53, subd. (j).) Here, petitioner asserts, the "other provision" prescribing a greater penalty is the drive-by shooting special circumstance, which imposes a sentence of life without parole. (Id. at 17.) Simply put, petitioner argues that the imposition of the special circumstance precludes imposition of the firearm enhancement based on the same act.

The California Court of Appeal rejected this argument, reasoning as follows:

> Defendant contends the trial court should not have imposed sentence on the firearm enhancement. We disagree.
>
> The special circumstance provided by section 190.2, subdivision (a)(21) resulted in a sentence of life without parole (LWOP). That subdivision applies when "The murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death." The jury was instructed to find the special circumstance true if and only if the People proved that defendant, with the intent to kill, intentionally shot the firearm from a moving vehicle, killing the victim outside of the vehicle.
>
> The relevant enhancement is provided by section 12022.53, subdivision (d), part of the Sandy Peters Memorial Act, more generally known as the "10-20-Life" statute, enacted in 1997. (Stats.1997, ch. 503; see People v. Chiu (2003) 113 Cal.App.4th 1260, 1263.) It resulted in a sentence of 25 years to life consecutive to the LWOP sentence. The relevant subdivision partly provides:
>
> "Notwithstanding any other provision of law, any person who, in

---

[2] The undersigned refers to the Petition and its exhibits by the page numbers assigned by CM/ECF.

6

the commission of [inter alia, murder], personally and intentionally discharges a firearm and proximately causes ... death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (§ 12022.53, subd. (d).)

The jury was instructed that in order to sustain this enhancement, the People had to prove defendant intentionally discharged a firearm, causing the death of another person, not an accomplice.

Thus, defendant's conduct of shooting from his vehicle resulted in both an LWOP term and a 10-20-Life term. Defendant's claim is that the 10-20-Life statute itself provides that its penalties do not apply when a longer term of imprisonment is imposed for the same act, and thus the sentence therefor should not have been imposed. He also contends the result violates the proscription on multiple punishment provided by section 654. We disagree with both claims.

At the time of the murder, section 12022.53, subdivision (j), read in part as follows: "When an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment pursuant to this section rather than imposing punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty or a longer term of imprisonment." Defendant reasons that because shooting from his vehicle resulted in "another provision of law provid[ing] for a greater penalty"-namely, the LWOP sentence for the drive-by shooting special circumstance-his sentence should not have been enhanced by section 12022.53, subdivision (d).

In People v. Shabazz (2006) 38 Cal.4th 55, the California Supreme Court concluded that that version of section 12022.53, subdivision (j) was facially ambiguous:

"When the concluding sentence of section 12022.53(j) is read in isolation, its meaning reasonably is susceptible to alternative interpretations: (1) the phrase 'unless another provision of law provides for a greater penalty or a longer term of punishment' might refer to another enhancement provision that requires an additional punishment greater than the punishment specified by the enhancement provisions contained within section 12022.53 ..., or, [alternatively,] (2) the phrase might refer to any sentencing provision that provides for a sentence greater than that specified by the applicable 12022.53 enhancement, ..." (38 Cal.4th at p. 67.)

After considering the context and purpose of the statute, the California Supreme Court rejected the latter interpretation, and concluded that "the Legislature intended that the enhancements set forth in section 12022.53 be added to a defendant's sentence when the underlying offense is punishable by death or by life

7

> imprisonment without the possibility of parole." (Shabazz, supra, 38 Cal.4th at p. 69.)
>
> Although defendant highlights differences in the procedural circumstances of this case, the import of the Shabazz decision cannot be reconciled with his claims. As stated without qualification by a more recent California Supreme Court decision: "[A] section 12022.53 enhancement must be imposed unless the defendant is subject to a different enhancement provision that specifies a longer term." ( People v. Palacios (2007) 41 Cal.4th 720, 726, fn. 4 ( Palacios ).) A special circumstance is " sui generis-neither a crime, an enhancement, nor a sentencing factor." (People v. Garcia (1984) 36 Cal.3d 539, 552, overruled on other grounds in People v. Lee (1987) 43 Cal.3d 666, 676.)
>
> We note that in 2006, the relevant part of subdivision (j) was amended to replace "another provision of law" with "another enhancement," as "declaratory of existing law as set forth by the California Supreme Court in People v. Shabazz (2006) 38 Cal.4th 55, 66-70." (Stats.2006, ch. 901, §§ 11.1, 14.1.) Although this version of the statute does not directly apply to defendant's case, we believe it correctly interprets Shabazz and clarified that a section 12022.53 enhancement is not precluded where a defendant suffers a special circumstance finding.

(Lod. Doc. 3 at 6-9.)

Initially, the undersigned notes that to the extent petitioner is claiming that application of the firearm enhancement violates section 12022.53, subd. (j), or any other state law, his claim is not cognizable on federal habeas review. A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton, supra, 768 F.2d at 1085; Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Cooper v. Brown, 510 F.3d 870, 1001(9th Cir. 2007) ("[I]t is not the policy of the federal courts to re-examine state court determinations of state law questions."). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972). Thus, the undersigned defers to the state court's interpretation of section 12022.53, subd. (j) in light of the California Supreme Court's holding in People v. Shabazz, 38 Cal. 4th 55 (2006).

8

1         Moreover, as respondent observes, federal habeas relief for a state sentencing error "is limited, at most, to determining whether the state court's finding was so arbitrary and capricious as to constitute an independent due process violation." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092 (1990); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) ("[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.")  Here, the undersigned does not find the trial court's imposition of a firearm enhancement, based on the same drive-by shooting as the special circumstance, to be arbitrary, capricious, or fundamentally unfair. See Ramirez v. State of Arizona, 437 F.2d 119, 120 (9th Cir. 1971) ("Cumulation of sentences is a matter of state policy[,]" thus challenge to consecutive sentence does not raise a federal question.)  This is especially true where the "cumulation" has no practical adverse effect, as in the case here where petitioner is serving a sentence of life without possibility of parole.  Nor has petitioner made the necessary showing under AEDPA that the Court of Appeal's decision was either contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).  For these reasons, the undersigned defers to the state court's affirmance of petitioner's sentence on the grounds stated in its in opinion.

        Next, petitioner argues that the imposition of "improper double punishment" for a single act of drive-by shooting violates federal and state proscriptions against double jeopardy. (Ptn. at 8-9.)  The Court of Appeal addressed this claim as follows:

> Defendant separately claims the multiple punishment for his single incident of shooting violates section 654. The California Supreme Court has held that "the sentence enhancement provisions of Penal Code section 12022.53 are not limited by the multiple punishment prohibition of section 654." ( Palacios, supra, 41 Cal.4th at p. 723.) Therefore, we reject his claim.
>
> Defendant asserts that the 10-20-Life enhancement is included within the special circumstance, and therefore not separately punishable under several state and federal provisions. These claims are frivolous because appellate counsel simply ignores the fact that

      the enhancement requires personal firearm use (§ 12022.53, subd.
      (d), but the special circumstance does not (see CALCRIM No.
      735).

(Lod. Doc. 3 at 9.)

    Given the presumed correctness of this analysis under state law, petitioner's second claim lacks merit.  Moreover, if the legislature has expressly intended a punishment to be cumulative, as the Court of Appeals has concluded here, such cumulative punishment does not violate double jeopardy prohibitions.  Missouri v. Hunter, 459 U.S. 359, 368-369, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006) (no habeas relief for double jeopardy challenge to 12022.53 firearm enhancement, as legislature intended enhancement statute to permit multiple punishments for same offense).  Thus, petitioner should be denied habeas relief on this basis.

  B. Special Circumstance

    Petitioner next claims that the drive-by shooting special circumstance (P.C. § 190.2 (a)(21)) is "overbroad" because it requires the same elements of proof as the drive-by theory of murder.

    The California Court of Appeal rejected this claim under state law, reasoning as follows:

> Defendant contends that the drive-by theory of murder and drive-by special circumstance have no distinction and therefore the special circumstance violates various federal rights, in large measure because the result did not narrow the category of drive-by murderers who may be subject to the death penalty.
>
> The jury was also tendered theories of premeditated murder and lying-in-wait murder, and defendant was never exposed to the death penalty in this case.
>
> More importantly People v. Rodriguez (1998) 66 Cal.App.4th 157 ( Rodriguez ), has rejected this claim. Defendant fails to cite Rodriguez, although the Attorney General cited it and it is directly on point.
>
> We relied on Rodriguez in another case in which a defendant was represented by appointed appellate counsel A.M. Weisman.

> (People v. Vu (Dec. 13, 2005, C046707) [nonpub. opn.].)
> Weisman's failure to discuss this relevant authority, with prior knowledge of it and after the Attorney General called it to her attention in this case, is improper appellate advocacy and the argument is frivolous.

(Lod. Doc. 3 at 10.)

As before, the undersigned defers to the Court of Appeal's interpretation of state law. As to the federal version of this claim, petitioner bases his Eighth Amendment argument on Lowenfield v. Phelps, 484 U.S. 231, 244-246 (1988), in which the Supreme Court held that "a capital sentencing scheme must genuinely narrow the class of people eligible for the death penalty[,]" and that the legislature must perform this "narrowing function" either by "narrow[ing] the definition of capital offenses . . . so that the jury finding of guilt responds to this concern" or "provid[ing] for narrowing by jury findings of aggravating circumstances at the penalty phase." (Internal citations omitted.)  Here, the state did not seek the death penalty and petitioner was not sentenced to death, so the question of whether the drive-by shooting special circumstance establishes an impermissible basis for death-eligibility under Lowenfield is not at issue. Moreover, petitioner does not show that the Court of Appeal's upholding of his sentence pursuant to the drive-by shooting special circumstance violates Lowenfield or any other Supreme Court precedent.  Indeed, in the AEDPA context, the Ninth Circuit has explicitly held that the Supreme Court death penalty jurisprudence applicable to narrowing special circumstances does not apply to life without parole cases.  Bradway v. Cate, 588 F.3d 990 (9th Cir. 2009).  See also Villalobos v. Kernan, 2009 WL 1605652 *9 (C.D. Cal. 2009).  Without a specific basis in Supreme Court jurisprudence applicable to his situation, here application of special circumstances for an LWOP sentence, petitioner cannot prevail even if a lower federal court would opt to do so absent AEDPA.  Thus, petitioner's claim for habeas relief on this basis should be denied.

\\\\\

\\\\\

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (Doc. No. 1) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 08/23/2010

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:014
vang0704.fr